24-1587, Kelley v. O'Malley. And Mr. Farr, welcome back. Thank you. May it please the court. The ALJ in this case denied Mr. Kelley at step two of the sequential evaluation process. This is normally a minimal threshold to get passed. In this case, Mr. Kelley does have mood disorder and anger issues, a history of that, and a consultative examiner's opinion that he may not be able to focus on tasks for two-hour periods of time. Maybe that opinion should not be adopted. I don't know. I think it should be. But it should have been considered. The ALJ did not address that opinion and did not address the claimant's subjective symptom reports of anger. I think those should have been enough to at least get past step two so that the ALJ could have made a step three finding regarding the listings in RFC. Why wasn't that harmless, Mr. Farr, in light of the fact that Dr. McCoy's opinions here were essentially consistent with the ALJ's ultimate finding that Kelley had an impairment that was no more than mild? Because Dr. McCoy had observed that Kelley's mood was mildly  So regardless of the specific exam findings, which are, I mean, the exam is normally discussing things like, can you do serial sevens and basic math problems? It's not typically going to have a robust discussion of all psychiatric issues. And so I have to depend upon the examiner's interpretation of their findings and their observations of this individual in person. Dr. McCoy did conclude that this individual may have problems focusing for two hours at a time. That's a basic requirement of any work, whether skilled or unskilled. So that's far more than a mild limitation. And so it's inconsistent with the judge's ultimate conclusion. Likewise, setting aside Dr. McCoy's opinion, it's unclear why subjective symptoms could be ignored, not even discussed as to why the anger should not be credited. I don't think that the agency's response that may could mean maybe or maybe not helps at all, because if that is the case, then the government is subsidizing doctors to provide non-opinions. That would be a non-answer to just read this as, well, maybe he's entirely incapable of even focusing for two hours, or maybe he's totally fine. That's a pretty big alternative read to suggest that that language doesn't mean anything when he's responding to that question. I actually, unless there are questions, don't think that there's a lot more that I'd discuss today, because I really think step two is normally a fairly minimal issue. I'm not sure why this evidence would not have at least been discussed by the ALJ and responded to in her decision. What do you think, what do you make of Dr. McCoy's functional capacity conclusion with regard to work pace within normal limits? What does that mean? So there's concentration, persistence, and pace, right? Concentration is the ability to focus on doing something. Persistence is the ability to, I'd read it as show up regularly and work a shift. And then pace is, are you variable in how quickly you can do something? And if you have a consistent pace, then you should be able to consistently do something for however long you can do it. So perhaps you can concentrate for an hour at a time, and during that time, you can consistently work at a steady pace throughout that period. That's how I'd read that. I see, so you're making a distinction between performing repetitive tasks continuously versus working at a normal pace. Correct, yes. And I think that the agency recognizes that distinction as well. Otherwise, they wouldn't divide it up between concentration, persistence, and pace. And then what do you make of Dr. McCoy's statement that Mr. Kelly informed him that he was learning, he has learned how to control his anger issues? Well, I think that would be a factor the judge could have considered if she'd responded to his subjective symptom reports about anger issues, but she didn't. So we're left with a void in the record there. On remand, perhaps the judge decides that this is a reason. I don't know if that's a reason in and of itself to reject his subjective symptom reports, given that, as I recall, he would walk away from situations, which would go to his ability to work consistently for a two-hour period. If you get angered by something and you just walk away, even if you're not getting into a fight, you're still not going to be able to persist for that two-hour period. So that would be the argument I would be bringing up to the ALJ if she was actually considering those issues, which she didn't. And what's your response to the commissioner's argument that McCoy's evaluation relates to an earlier time frame? Well, maybe the ALJ could have used that reasoning. I'm not sure why that would excuse consideration of it entirely, or why that would mean that if you couldn't concentrate for two hours a few months before the period under consideration, why are we expecting that you're now entirely fine, that you would no longer have such a drastic limitation by this point a few months later? So maybe there's a way that the ALJ can get around that, but she would need to explain the reasoning for that, and that is currently not present in the record. Ultimately, I guess to summarize, it's not that there's no realm in which the ALJ could deny this individual, but this claimant, they go through a two-year process of these appeals, they deserve a fair hearing, and we're not even getting past step two here, a minimal step, when we have a potentially disabling opinion and these anger issues that the judge is not even responding to. I could see a decision, potentially, that denies this person, and I don't have an appeal issue there, I just have to accept that I disagree, but the judge produced a reasonable outcome, but that's not what this decision is right now. We don't know how the judge would even weigh these issues, because she didn't address them. Any further questions? Okay, I'll reserve my time. Okay. Mr. Meyer, good morning. Good morning, Your Honors. Counsel, may it please the Court, I am Drew Meyer of the Social Security Administration, representing the appellee, Commissioner of Social Security. Your Honors, in his reply, Mr. Kelly identifies the core question in this case, which is, could a reasonable person have found Mr. Kelly's mental impairments non-severe? And we have a clear answer to that question. Not only did one person so find the ALJ, but three found the same thing in this case, the ALJ and both reviewing psychologists, Drs. Unversaw and Neville. Drs. Unversaw and Neville found that Mr. Kelly was only mildly limited in all four functional categories, as specified in the regulations, and concomitantly found that Mr. Kelly had no severe mental impairments. And this nexus between mild limitations and non-severity of the underlying impairment comports with both the regulations, specifically Section 404.1520A.D.1, which specifies that if one has mild limitations in the functional categories, the associated impairment is generally non-severe. It also comports with the plain meaning of the word mild. The Oxford English Dictionary actually specifies that in the context of illness, the word mild means non-severe. The regulations also say, though, that the ALJ should discuss the consistency and supportability of every medical opinion in the record. And I don't think there's any dispute. The ALJ did not address Dr. McCoy's opinion. That is correct, Your Honor. The ALJ did not discuss Dr. McCoy's opinion. We submit, based on the attenuation of the probative value of Dr. McCoy's opinion from Mr. Kelly's functioning during the relevant period, it was not error for the ALJ to not discuss that opinion. But again, even the opinion, having been issued five months previous to the relevant period in this case, and being equivocal as it was. But even if that was error, the court can have great confidence that if this was decided by the ALJ on remand, and she did discuss Dr. McCoy's opinion explicitly, that she would reach precisely the same conclusion. We reach this when we argue that it is, as Judge Sainiviu alluded to earlier, entirely harmless. In fact, the McCoy report actively augments the evidence supporting a finding of non-severity in this case. To the extent that it illuminates Mr. Kelly's functioning during the relevant period, it is consistent with the ALJ's determination. The small component of the McCoy report upon which Mr. Kelly relies is his note that Mr. Kelly was mildly depressed and had a mild difficulty with an attention task. Again, mild limitations are consistent with the finding that the underlying impairment is non-severe. Otherwise, the McCoy report was entirely normal. We have Mr. Kelly with a cooperative attitude, intact memory, average judgment and abstract thinking, could work at a normal pace and had no needs for supervision. And very notably, the McCoy report utterly belies Mr. Kelly's allegation of disabling anger. He stated to Dr. McCoy that he used to have trouble with anger but has now learned to control this. That's page 359 of the record. And if there was no other evidence of the support that the McCoy report would provide for a finding of non-severity, we have it in the fact that a week after Dr. McCoy authored the report, his initial previous disability benefits application was denied. So for those reasons, Your Honor, the ALJs not mentioning or analyzing the McCoy report explicitly is entirely harmless. Going back to the McCoy report's utter undermining of Mr. Kelly's allegation of disabling anger, the ALJ sufficiently addressed all of Mr. Kelly's subjective allegations, including those of debilitating anger. As this court has held in many cases, including Shidler versus Astru, an ALJ need not specify which statements she finds credible and need not provide a written evaluation of every one of a claimant's statements. In this case, the ALJ properly found Mr. Kelly's subjective symptom allegations inconsistent with the record and so discounted them. She also specified inconsistencies between those allegations in the record, contrasting, for instance, Mr. Kelly's allegations of debilitating back pain with the fact that he admitted he didn't take any pain medication for his back. She contrasted his professed memory problems with his ability at the hearing to detail his work and medical histories. And she did consider Mr. Kelly's allegations of disabling anger. She specifically acknowledged his alleged disability due to intermittent explosive disorder, a disorder defined by angry outbursts, but discounted that allegation, finding that he had a non-severe impairment in that respect, based on substantial evidence, including objective examination results of normal mood, normal affect, and cooperativeness. So Mr. Kelly fails to meet his high burden to prove that the ALJ's subjective symptom assessment was patently wrong in this case. The court has no further questions? Thank you. Thank you. We ask that the court affirm the district. Thank you, Mr. Meyer. Mr. Farr. Thank you. So first, I'd like to note that OGC has offered reasons as to why the judge could rule alternatively. But we are in an adversarial proceeding here, and we are not in an adversarial proceeding before the judge. Just because we can find a realm in which the judge could reject this evidence does not mean that a judge acting as a non-adversarial magistrate, inquiring in the evidence, would adopt the findings that OGC is suggesting they make. I think it's just as plausible that a non-adversarial fact finder, if she actually acknowledged this evidence that I'm raising, might have ruled in my client's favor. Also, there was a statement just now by counsel that the ALJ does not need to address subjective symptoms, but that is contradicted by 20 CFR 404-1529. There is an obligation for the judge to respond to subjective symptoms. I'm not arguing about back pain or memory problems today, so to the extent that the judge had substantial support for those conclusions, I'm not disagreeing with that. The nature of intermittent explosive disorder is, of course, that it is intermittent explosive anger. So the fact that on some exams there is a normal mood does not explain why the individual with intermittent explosive disorder would not have angry outbursts. Just because counsel can identify places where normal mood was referenced in the ALJ's decision is not the same as the ALJ saying, this normal mood is why I'm rejecting IED. And I don't know that that would make sense if the judge was to just look at some normal mood findings and say that. If the judge had actually directly referenced contrary evidence to anger, saying, like, for instance, this much discussed, my anger is now under control, which, again, I don't think walking away would be a resolution in the workplace. But that would be a better way to respond to anger than random citations to things that are not addressing anger in general. Overall, my point would be that even though there are counter-arguments today in an adversarial setting saying, well, the judge could have ruled another way, ultimately we have a non-adversarial proceeding where the judge failed to meet her regulatory duty to respond to a medical opinion and respond to subjective symptom complaints about anger. If she does that in a future hearing, she may agree with me. She may disagree with me. But I ask this court to please remand so that the judge has the opportunity to actually do her job on that point. Thank you. Thank you. The court will take the case under advisement. Thank you.